UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

| | |
|---|---|
| In re: | Chapter 13 |
| Ruby Tolbert, | Case No. 19-54047 |
| Debtor. / | Hon. Phillip J. Shefferly |
| Ruby Tolbert, | Adversary Proceeding No. 20-4170-PJS |
| Plaintiff, | |
| v. | |
| Morgan Waterfront Homes, LLC, | |
| Defendant. / | |

**OPINION GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

The debtor in this chapter 13 case filed this adversary proceeding against an entity that holds a mortgage on her home. The debtor's complaint seeks damages for conversion and slander of title caused by the defendant forging the debtor's name to a deed to the debtor's home. The defendant has moved for summary judgment. For the reasons in this opinion, the Court grants the defendant's motion with respect to the

debtor's claims for conversion but denies the defendant's motion with respect to the debtor's claims for slander of title.

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(E) and (O), over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and § 157(a).

## Summary judgment standard

Fed. R. Civ. P. 56 for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. Id. at 247-48. A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Anderson, 477 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the nonmoving party's case is lacking." Kalamazoo River Study Group v. Rockwell International Corp., 171 F.3d 1065, 1068 (6th Cir. 1999 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the

nonmoving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the nonmoving party." Id. (citing Anderson, 477 U.S. at 248). "The nonmoving party, however, must provide more than mere allegations or denial . . . without giving any significant probative evidence to support" its position. Berryman v. Rieger, 150 F.3d at 566 (citing Anderson, 477 U.S. at 256).

## Facts

The following facts are not in dispute except where noted.

Jerome Morgan ("Morgan"), a plumber by trade, is the sole member of Waterfront Homes, LLC, a Michigan limited liability company ("Waterfront Homes"). Through Waterfront Homes, Morgan developed homes on the Detroit River waterfront. One of the homes is 107 Sandbar Lane, Detroit, Michigan ("Sandbar Property"). On June 25, 2015, Waterfront Homes signed a warranty deed that conveyed the Sandbar Property to Ruby Tolbert ("Debtor") for the sum of $580,000.00. The same day, the Debtor signed a mortgage ("Mortgage") on the Sandbar Property in favor of Waterfront Homes to secure payment of the $580,000.00. The warranty deed and the Mortgage were both recorded with the Wayne County Register of Deeds on August 6, 2015.

The Debtor defaulted on payments required by the Mortgage in 2016, 2017 and 2018. On April 11, 2019, Swistak & Levine, P.C. ("Swistak"), a law firm representing Waterfront Homes, mailed the Debtor a letter ("Foreclosure Notice") notifying the

Debtor that there was a default in the payments required by the Mortgage and stating that Waterfront Homes intended to foreclose the Mortgage.

Soon after the Foreclosure Notice, the facts that are at issue in this adversary proceeding took place.

On April 30, 2019, someone — not identified in the materials before the Court — recorded with the Wayne County Register of Deeds a quitclaim deed ("Disputed Deed") purportedly signed by the Debtor on April 8, 2019. The Debtor's signature on the Disputed Deed looks different than her signature on the Mortgage. The Disputed Deed was notarized by Kimberly Darling-Hardy ("Darling-Hardy"), a former employee of Waterfront Homes who continued to notarize documents for Morgan after she left her employment with Waterfront Homes sometime in 2013. The Disputed Deed conveyed the Debtor's interest in the Sandbar Property for $1.00 to an entity described as Morgan Waterfront Condo, a Michigan corporation ("Waterfront Condo").

On June 19, 2019, Swistak sent the Debtor a Notice to Quit to Recover Possession of Property Landlord-Tenant ("Notice to Quit"). In contrast to the Foreclosure Notice, which was based on the Mortgage, the Notice to Quit asserted that Waterfront Homes was the "landlord" for the Sandbar Property and that Waterfront Homes was now evicting the Debtor.

- 4 -

20-04170-pjs   Doc 64   Filed 11/13/20   Entered 11/13/20 15:29:56   Page 4 of 18

On July 9, 2019, Morgan signed and recorded with the Wayne County Register of Deeds an Affidavit of Scrivener's Error ("Morgan Affidavit"). The Morgan Affidavit states that Morgan is "the drafter of [the Disputed Deed,]" the Disputed Deed "was intended to convey" the Sandbar Property, and that there is a "scrivener's error" in the Disputed Deed. That error is the name of the grantee. Instead of Waterfront Condo, "the intended grantee [is] Morgan Waterfront Condominium, LLC." On July 29, 2019, apparently in reliance on the Disputed Deed, Swistak filed a complaint in the State of Michigan 36th Judicial District Court to evict the Debtor from the Sandbar Property.

The record before the Court is not clear on the precise date, but at some point during the pendency of the eviction action, the Debtor's attorney informed Swistak that the Debtor did not sign the Disputed Deed. Waterfront Homes then dismissed the eviction action and instead began foreclosure proceedings on the Mortgage.

On October 2, 2019, the Debtor stopped the foreclosure proceedings by filing this chapter 13 case. On schedule A/B the Debtor lists the Sandbar Property as her home and values it at $600,000.00. On schedule D, the Debtor states that there is a disputed mortgage on the Sandbar Property for $510,000.00 held by Waterfront Homes. The Debtor also lists on her schedule A/B an asset of "unknown" value consisting of a "lawsuit" against Waterfront Homes for "Show Cause, Restraining Order, Preliminary Injunction and for Damages." The Debtor's chapter 13 plan

- 5 -

20-04170-pjs    Doc 64    Filed 11/13/20    Entered 11/13/20 15:29:56    Page 5 of 18

proposes to make monthly payments to Waterfront Homes on the Mortgage both with respect to the pre-petition arrearage and with respect to principal and interest going forward.

The original confirmation hearing on the Debtor's plan was adjourned by agreement of the Debtor and the two parties who filed objections to the plan — Waterfront Homes and the chapter 13 trustee ("Trustee"). Meanwhile, Waterfront Homes filed a motion for relief from the automatic stay so that it could proceed to foreclose the Mortgage.

On March 19, 2020, the Court heard the motion for stay relief. The Debtor opposed the motion because she had just filed this adversary proceeding three days earlier on March 16, 2020. The Debtor explained that in the adversary proceeding she alleges that Waterfront Homes forged the Disputed Deed and is therefore liable for conversion and slander of title. The Debtor requested the Court to continue the automatic stay in effect while the Court hears the adversary proceeding. Waterfront Homes argued that the adversary proceeding and the Disputed Deed are irrelevant to the motion for stay relief for two reasons. First, on March 10, 2020, Waterfront Homes had signed and recorded a quitclaim deed of the Sandbar Property back to the Debtor that "expunged" the Disputed Deed and preserved Waterfront Homes' interest in the Sandbar Property under the Mortgage. Second, at no time was the Debtor ever evicted

from or otherwise dispossessed of the Sandbar Property. The Debtor has continued to live there even though she was and remains in default under the Mortgage.

The Court continued the automatic stay in effect but conditioned it on the Debtor making adequate protection payments of $3,500.00 per month to Waterfront Homes. The Debtor has made the monthly adequate protection payments and the automatic stay has remained in effect as the parties have litigated the adversary proceeding.

On September 8, 2020, Waterfront Homes filed a motion for summary judgment ("Summary Judgment Motion") (ECF No. 46) with supporting documents. On September 24, 2020, the Debtor filed a response ("Response") (ECF No. 53) with supporting documents including an affidavit (ECF No. 56) of the Debtor and transcripts of depositions of Morgan and Darling-Hardy. On November 4, 2020, the Court heard the Summary Judgment Motion and took it under advisement.

## Discussion

The Debtor's complaint has five counts, all of which are brought under Michigan law. The five counts are labeled in the complaint as follows:

Conversion/Treble Damages Pursuant to MCLA § 600.2919a;

Violation of MCLA § 600.2907a;

Violation of MCLA § 565.108;

Quiet Title; and

Common Law/Slander of Title.

Waterfront Homes requests summary judgment with respect to all five counts. In the Response, the Debtor states that she withdraws the Quiet Title count. That leaves four counts. The Court will address the four remaining counts in sequence.

## Conversion

The first count in the Debtor's complaint is for conversion. There are two types of conversion under Michigan law: common law conversion and statutory conversion. The Debtor argues that the Disputed Deed was an act of both common law conversion and statutory conversion. Waterfront Homes argues that it is entitled to summary judgment on the Debtor's conversion count because both common law conversion and statutory conversion only apply to personal property, not real property. Because the Sandbar Property is indisputably real property, not personal property, Waterfront Homes asserts that the Disputed Deed cannot constitute conversion.

In Aroma Wines & Equipment, Inc. v. Columbian Distribution Services, Inc., 871 N.W.2d 136 (Mich. 2015), after reviewing the history of the common law tort of conversion, the Michigan Supreme Court stated that "the scope of a common-law conversion is now well-settled in Michigan as 'any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'" Id. at 144 (quoting Nelson & Witt v. Texas Co., 239 N.W. 289 (Mich. 1931)).

- 8 -

20-04170-pjs    Doc 64    Filed 11/13/20    Entered 11/13/20 15:29:56    Page 8 of 18

In the Response, the Debtor cites several reported decisions discussing common law conversion in Michigan but not a single decision that holds that common law conversion applies to real property.

The Debtor's statutory conversion claim is made under Mich. Comp. Laws Ann. § 600.2919a. When originally enacted in 1976, the statute did not create a remedy against one who converted another's property, but only created a remedy against one who purchased, received or possessed property that they knew to have been converted by another. In 2005, the statute was amended to its present version by adding a remedy against one who does the act of conversion in addition to a remedy against one who purchases, receives or possesses property after it was converted. The operative text is in Mich. Comp. Laws Ann. § 600.2919a(1)(a), which proscribes "stealing or embezzling property or converting property to the other person's own use." A significant feature of this statute is that it provides that a person "may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees."

The Debtor correctly observes that the text of the statute does not contain an express exception for real property. However, the Debtor does not cite to a single decision that holds that the statute applies to real property. There are reported decisions holding that it does not.

In <u>Collins v. Wickersham</u>, 862 F. Supp. 2d 649 (E.D. Mich. 2012), the United States District Court for the Eastern District of Michigan directly addressed the issue.

In Collins, the plaintiffs filed a multi-count complaint against Fannie Mae, Wells Fargo Bank, and the Macomb County Sheriff based on the foreclosure of certain real property. The complaint included a count for conversion. The court began its discussion of Michigan law regarding conversion as follows:

> Only personal property may be the subject of an action for conversion. Eadus v. Hunter, 268 Mich. 233, 237, 256 N.W. 323, 325 (Mich. 1934); Embrey v. Weissman, 74 Mich. App. 138, 143, 253 N.W.2d. 687, 690 (Mich. Ct. App. 1977) ("Property while still part of the realty cannot be the subject of conversion.").

Id. at 656.

The Collins court then turned its attention to Mich. Comp. Laws Ann § 600.2919a:

> Plaintiffs argue that they have properly brought a conversion claim under Mich. Comp. Laws § 600.2919a. . . . Although the statute does not expressly distinguish between real and personal property, the terms "stolen," "embezzled," and "converted" apply only to personal property. See Thoma v. Tracy Motor Sales, Inc., 360 Mich. 434, 438, 104 N.W.2d 360, 362 (Mich. 1960) ("Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.").

Id.

Although unpublished, Webb v. Greer, No. 235424, 2003 WL 21675876 (Mich. Ct. App. July 17, 2003) is also instructive. The defendant sold real property to the plaintiff, which the two intended to jointly develop. Sometime later, the plaintiff discovered that the defendant had recorded three quit claim deeds, which the plaintiff

- 10 -

20-04170-pjs    Doc 64    Filed 11/13/20    Entered 11/13/20 15:29:56    Page 10 of 18

alleged were forged.  Id. at *1.  The plaintiff filed suit and included a claim for conversion of the real property.  The trial court denied the defendant's motion for directed verdict on this count.  The Michigan Court of Appeals reversed.

> The only specific instance of alleged conversion plainly involves defendant's conveyance of the three development parcels by way of the forged Quit Claim Deeds.  Because the tort of conversion does not occur with respect to real property, defendant's act of conveying the three development parcels via the forged deeds did not constitute an act of conversion.

Id. at *9 (internal quotation marks and footnote omitted).

Michigan law does not recognize a cause of action for conversion of real property.  The Court agrees with Waterfront Homes that it is entitled to summary judgment to the extent that the Disputed Deed is alleged to be an act of conversion of the Debtor's interest in the Sandbar Property.

But the Debtor has a fall back conversion argument that the Court must also consider.  Both in the Response and at the hearing the Debtor argues that even if the Court holds that conversion only applies to personal property, the Summary Judgment Motion must still be denied because Waterfront Homes did convert personal property when it forged the Debtor's name on the Disputed Deed.  More specifically, the Debtor argues that her name constitutes a form of personal property and the Defendant converted that property when her signature was forged on the Disputed Deed.

- 11 -

20-04170-pjs    Doc 64    Filed 11/13/20    Entered 11/13/20 15:29:56    Page 11 of 18

The Debtor's fall back argument fails for two reasons. First, it was not pled in the Debtor's complaint. The only act of conversion pled in the Debtor's complaint is conversion of the Sandbar Property, not conversion of the Debtor's name. Second, and more importantly, all the authorities cited by the Debtor in support of this new argument come from outside of Michigan and do not apply Michigan law. What's more, the authorities cited by the Debtor primarily relate to the interest that an individual has in their name, likeness and identity, and to cases involving theft of that name, identity or likeness. None of the cases cited by the Debtor deal with forgery of a deed to real property. The Debtor's attempt to shoehorn an allegedly forged deed of real property into some form of identity theft is not supported by Michigan law regarding conversion.

The Court holds that there are no genuine issues of material fact in dispute that prevent the Court from granting the Summary Judgment Motion with respect to the count in the Debtor's complaint for conversion.

## MCLA § 600.2907a

The second count in the Debtor's complaint is based on the Debtor's allegation that Waterfront Homes recorded the Disputed Deed in violation of Mich. Comp. Laws Ann. § 600.2907a, which the Debtor describes as a form of slander. The relevant portion of the statute provides that a "person who violates [Mich. Comp. Laws Ann. § 565.25] by encumbering property through the recording of a document without

lawful cause with the intent to harass or intimidate any person is liable to the owner of the property" for costs in bringing a quiet title action, damages sustained as a result of the filing of the encumbrance, and exemplary damages.

In the Summary Judgment Motion, Waterfront Homes argues that intent is a required element under the statute and that there is no evidence of any intent on the part of Waterfront Homes to harass or intimidate the Debtor.

In her affidavit, the Debtor states that she "did not sign" the Disputed Deed and "did not give permission" to anyone else to sign her name to it. In his deposition testimony, Morgan states that he does not know who prepared the Disputed Deed and does not know if it was forged. According to Morgan, the Disputed Deed just "somehow landed on my desk." Even if there exists an explanation that can reconcile the Debtor's affidavit with Morgan's deposition testimony, Morgan's professed ignorance about the Disputed Deed during his deposition does not square with the actions that he took and described under oath in his own affidavit. In paragraph 2 of the Morgan Affidavit, Morgan states that he was "the drafter" of the Disputed Deed; in paragraph 4, Morgan states that the Disputed Deed "was intended to convey" the Sandbar Property; and, in paragraph 5, Morgan states that the "intended grantee" was "Morgan Waterfront Condominium, LLC." Further, Morgan does not dispute that once the Disputed Deed was signed and recorded, Waterfront Homes filed an eviction action against the Debtor, claiming to be the Debtor's landlord for the Sandbar Property.

Morgan's deposition testimony and the Morgan Affidavit leave many unanswered questions not just about how the Disputed Deed came to be, but about Morgan's intent regarding the recording of the Disputed Deed. And the deposition testimony of Darling-Hardy does not help. When asked if she remembered Morgan requesting her to notarize the Debtor's signature on the Disputed Deed without the Debtor present, Darling-Hardy said, "I'll take the Fifth."

The Court finds that there are genuine issues of material fact in dispute about the Disputed Deed and Morgan's role and intent in drafting and recording it that prevent the Court from granting the Summary Judgment Motion with respect to the count in the Debtor's complaint for violation of Mich. Comp. Laws Ann. § 600.2907a.

## MCLA § 565.108

The third count in the Debtor's complaint is based on the Debtor's allegation that Waterfront Homes recorded the Disputed Deed in violation of Mich. Comp. Laws Ann. § 565.108, which the Debtor also describes as slander of title. The relevant portion of that statute provides that "[n]o person shall use the privilege of filing notices [under the recording statutes] for the purpose of slandering the title to land" and provides for an award of costs and attorney fees in bringing a quiet title action and for "all damages that plaintiff may have sustained as the result of such notice of claim having been so filed for record."

In the Summary Judgment Motion, Waterfront Homes argues once again that the Debtor has not come forward with any evidence to show that Waterfront Homes recorded the Disputed Deed with the purpose of slandering the Debtor's title to the Sandbar Property. For the reasons explained above regarding the Debtor's count for relief under Mich. Comp. Laws Ann. § 600.2907a, the Court disagrees.

The Summary Judgment Motion raises more questions than it answers about Morgan's role and purpose in drafting and recording the Disputed Deed. Morgan states in the Morgan Affidavit that he drafted the Disputed Deed but does not say why he did. Was he trying to trick or defraud the Debtor into giving up her home for $1.00? If not, what is the explanation for it? Who signed it? And who was present when Darling-Hardy notarized what purports to be the Debtor's signature on the Disputed Deed?

The Court finds that there are genuine issues of material fact in dispute about the Disputed Deed and Morgan's purpose that prevent the Court from granting the Summary Judgment Motion with respect to the count in the Debtor's complaint for violation of Mich. Comp. Laws Ann. § 565.108.

Common law slander of title

The final count in the Debtor's complaint is for common law slander of title. Like conversion, Michigan law recognizes both common law slander of title and statutory slander of title. The Court has already discussed the Debtor's counts for

statutory slander of title. In Fannie Mae v. Lagoons Forest Condominium Ass'n, 852 N.W.2d 217 (Mich. Ct. App. 2014), the Michigan Court of Appeals explained that "[t]o prove slander of title under the common law, a claimant must show falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property causing special damages." Id. at 223 (internal quotation marks and citation omitted). The Fannie Mae court emphasized that

> [t]he crucial element is malice. A slander-of-title claimant is required to show some act of express malice by the defendant, which implies a desire or intention to injure. Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury.

Id. (internal quotation marks and citations omitted).

Waterfront Homes argues that the Debtor does not allege a "single act" by it that "suggests a malicious intent." The Court disagrees. The Debtor alleges that Waterfront Homes forged her signature on the Disputed Deed. That Waterfront Homes did so to take the Debtor's home at the Sandbar Property for $1.00. That Waterfront Homes filed a phony eviction action based on the forged deed, claiming to be the Debtor's landlord. And that Waterfront Homes dismissed the eviction action as soon as the Debtor's attorney notified Swistak that the Debtor had not signed the Disputed Deed. The Debtor backs up these allegations with her affidavit, the Morgan Affidavit, Morgan's deposition testimony and Darling-Hardy's deposition testimony.

Waterfront Homes does not provide any affidavits or deposition testimony to contradict the affidavits and deposition testimony supplied by the Debtor but instead seems to argue that the Debtor cannot show malice because Waterfront Homes dismissed the eviction action and executed a deed back to the Debtor to "expunge" the Disputed Deed. In other words, no harm, no foul since the Debtor continues to live in the Sandbar Property. While these facts may be relevant to ascertaining whether the Debtor suffered any damages, and the measure of such damages, they are not relevant to the issue of malice. Whether the Debtor can ultimately prove malice at trial remains to be seen, but the Court has no trouble finding that the Debtor has come forward with more than enough evidence to create a genuine issue of material fact regarding malice for purposes of the Summary Judgment Motion.

The Court finds that there are genuine issues of material fact in dispute about the Disputed Deed and whether Waterfront Homes acted with malice that prevent the Court from granting the Summary Judgment Motion with respect to the count in the Debtor's complaint for common law slander of title.

## Conclusion

There are lots of fact questions about how and why the Disputed Deed came to be. They will have to be resolved at trial. Likewise, questions about any damages suffered by the Debtor will also have to be resolved at trial. The Debtor has now withdrawn the count for Quiet Title in her complaint and the Court has granted

- 17 -

summary judgment with respect to the count for conversion in her complaint. That just leaves the statutory and common law slander of title counts for trial. The Court makes this point to avoid any confusion about what's left for trial. It is necessary for the Court to do so because the Debtor made several new claims and arguments, both in the Response and at the hearing on the Summary Judgment Motion, that simply were not pled in her complaint. The Court deliberately did not address each of these new claims and arguments in this opinion because they are not properly before the Court.

The Court will enter a separate order consistent with this opinion.

**Signed on November 13, 2020**

/s/ Phillip J. Shefferly
Phillip J. Shefferly
United States Bankruptcy Judge